UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WASHINGTON STATE INVESTMENT BOARD,

Plaintiff,

- against -

ODEBRECHT S.A, CONSTRUTORA NORBERTO ODEBRECHT S.A., and ODEBRECHT ENGENHARIA E CONSTRUÇÃO S.A.,

Defendants.

**MEMORANDUM OPINION & ORDER**

17 Civ. 8118 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff Washington State Investment Board asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), the Securities and Exchange Commission ("SEC" ) Rule 10b-5, and state law against Defendants Odebrecht S.A. ("Odebrecht"), Construtora Norberto Odebrecht S.A. ("Norberto"), and Odebrecht Engenharia e Construção S.A. ("Engenharia") (collectively, "Defendants"). (Second Amended Complaint ("SAC") (Dkt. No. 86) ¶¶ 199-229)

In an October 6, 2023 letter, Plaintiff requests permission to move the Court to apply collateral estoppel to certain facts judicially established in DoubleLine Capital LP, et al. v. Odebrecht Finance, Ltd., et al., No. 17-cv-04576-GHW-BCM, 2022 WL 3029014, at *1 (S.D.N.Y. July 19, 2022) ("DoubleLine"). (Pltf. Oct. 6, 2023 Ltr. (Dkt. No. 121)) On November 7, 2023, this Court referred Plaintiff's contemplated motion to Magistrate Judge Barbara Moses for a Report and Recommendation ("R&R"). (Am. Order of Ref. (Dkt. No. 129)) On December 7, 2023, Plaintiff moved for partial summary judgment on the ground that the doctrine of

collateral estoppel precludes Defendants from re-litigating certain factual and legal issues addressed in DoubleLine. (Pltf. Mot. (Dkt. No. 139) at 2)[1] In a July 10, 2024 R&R, Judge Moses recommends that this Court deny Plaintiff's motion for partial summary judgment. (R&R (Dkt. No. 151) at 25) No party has objected to the R&R.

For the reasons stated below, this Court will adopt Judge Moses's R&R in its entirety, and Plaintiff's motion for partial summary judgment will be denied.

## BACKGROUND[2]

The background of this litigation is set forth in Washington State Inv. Bd. v. Odebrecht S.A. ("Odebrecht I"), 461 F. Supp. 3d 46, 55-59 (S.D.N.Y. 2020) and in Washington State Inv. Bd. v. Odebrecht S.A. ("Odebrecht II"), 17 Civ. 8118 (PGG), 2023 WL 5016787, *1-*2 (S.D.N.Y. Aug. 4, 2023). Familiarity with Odebrecht I and Odebrecht II is assumed. The Court will only briefly summarize the facts underlying this litigation as well as the facts underlying the DoubleLine action referenced above.[3]

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2] The parties have not objected to Judge Moses's factual statement. Accordingly, this Court adopts it in full. See Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the [c]ourt adopts [the factual statement] in full.").

[3] "A court can properly take judicial notice of documents filed in another court's docket to establish the fact of the litigation and related filings." Palisades Estates EOM, LLC v. Cnty. of Rockland, No. 23-cv-4215 (NSR), 2025 WL 1295333, at *42 n.51 (S.D.N.Y. May 5, 2025) (citing Prince v. Intercept, 634 F. Supp. 3d 114, 126 (S.D.N.Y. 2022)).

# I. PARTIES

Plaintiff Washington State Investment Board "is a state agency responsible for the investment and management of public trust and public employee retirement funds." (R&R (Dkt. No. 151) at 5)

Defendant Odebrecht "is a holding company headquartered in Brazil that, through various subsidiaries and operating entities, conducts business in construction, engineering, infrastructure, chemicals, utilities and real estate . . . in Brazil and throughout 27 other countries, including the United States." (SAC (Dkt. No. 86) ¶ 46)

Defendant Norberto is "a wholly owned subsidiary of Defendant Odebrecht, primarily engaging in the construction of large-scale infrastructure and other public works projects" around the world. (Id. ¶ 47)

On March 31, 2015, Odebrecht reorganized, and Defendant Engenharia "took over [Norberto's] role as the consolidator of Odebrecht's construction subsidiaries." (Id. ¶ 48) Engenharia has since become "a guarantor of the [securities] bought by [P]laintiff." (Id.)

# II. FACTS

## A. Facts Underlying the Instant Action

The Second Amended Complaint ("SAC") alleges that Defendants engaged in and concealed a massive bribery scheme, and made material misstatements in connection with the sale of securities to Plaintiff.

### 1. The Bribery Scheme

"In 2006, [D]efendants created 'a standalone division within [Norberto] called the Division of Structured Operations,' which was utilized to conceal communications and the movement of funds in furtherance of a massive international bribery scheme." (R&R (Dkt. No. 151) at 4 (quoting SAC (Dkt. No. 86) ¶¶ 58-65)) The amount of the bribes that the Division of

Structured Operations paid increased each year – "from $60 million in 2006 to $730 million in 2013." (Id. at 5) As a result, over a nine-year period, the Division of Structured Operations paid a total of $3.3 billion in bribes. (See id. at 4-5)

**2. The Notes and the Alleged Misstatements**

Between 2012 and 2015, Plaintiff purchased more than $100 million in notes from Defendants (the "Notes"). (Id. at 5) The Notes included securities issued by Defendant Odebrecht's subsidiary, Odebrecht Finance, Ltd., and guaranteed by Defendant Norberto. (Id. at 1)

The SAC alleges that Defendants made false and misleading statements "in [D]efendants' offering materials [for the Notes] and [in] underlying financial statements." (Id. at 6) For example, the offering memoranda "'emphasized that Odebrecht and [Norberto] secured contracts through a "competitive bidding process," when, in truth, [their] success, and their reported financial results, depended on a massive bribery and kickback scheme' that was concealed from the investing public." (Id. (quoting SAC (Dkt. No. 86) ¶ 11)) The SAC further alleges that Defendants' offering memoranda and related promotional material falsely touted their compliance with Brazilian Generally Accepted Accounting Principles ("GAAP") and the norms of the Brazilian Financial Accounting Standards Board (Comitê de Pronunciamentos Contábeis or "CPC"). (See SAC (Dkt. No. 86) ¶¶ 121-61)

**3. Revelation of the Bribery Scheme and Plaintiff's Subsequent Losses**

In approximately 2014, Brazilian law enforcement authorities launched a covert investigation into political corruption and bribery. (R&R (Dkt. No. 151) at 5) The investigation – code-named "Lava Jato," or "Operation Car Wash" – initially focused on Brazilian state-

owned energy company Petróleo Brazileiro S.A., better known as Petrobras. (Id.) Operation Car Wash investigators eventually turned their attention to Odebrecht. (Id.)

On June 19, 2015, Brazilian authorities arrested Marcelo Odebrecht, Odebrecht's chief executive officer. (Id.) He was

> convicted of corruption and money laundering and sentenced to more than 19 years in prison. . . . Other top Company officials have been similarly implicated and have agreed to cooperate in exchange for leniency. Odebrecht itself [] pled guilty [on December 21, 2016 in the U.S. District Court for the Eastern District of New York] to violations of the antibribery provisions of the Foreign Corrupt Practices Act ("FCPA"), implicating its [Norberto] subsidiary as an instrumentality in the scheme, and agreeing to pay $2.6 billion in penalties . . . .

(SAC (Dkt. No. 86) ¶ 15)

The SAC alleges that, following the disclosure of Odebrecht's bribery scheme, "the price of the Odebrecht Notes declined precipitously" and, as a result, Plaintiff "suffered tens of millions of dollars in losses." (R&R (Dkt. No. 151) at 6)

## B. The DoubleLine Action

### 1. The DoubleLine Allegations

On June 16, 2017, DoubleLine Capital LP, DoubleLine Income Solutions Fund, and DoubleLine Funds Trust (collectively, "DoubleLine") filed a complaint against the same defendants named in the instant case – Odebrecht, Norberto, and Engenharia – asserting claims under Sections 10(b) and 20(a) of the Exchange Act, SEC Rule 10b-5, and state law. (Id.) DoubleLine alleges that it purchased bonds from Odebrecht's subsidiary, Odebrecht Finance, Ltd., in reliance on materially false and misleading statements in Defendants' offering memoranda, financial statements, annual reports, and press releases between 2012 and 2014. (See Britton Decl., Ex. 1 (DoubleLine Third Amended Complaint, DoubleLine Capital LP et al. v. Construtora Norberto Odebrecht S.A. et al., No. 17-CV-4576-GHW (S.D.N.Y. Sept. 7, 2018) ("DoubleLine TAC")) (Dkt. 142-1) ¶¶ 25-27, 120-229, 294-300))

According to DoubleLine, Odebrecht's statements were false and misleading because, inter alia, they attributed Norberto's success in winning large public contracts to its participation in "competitive bidding process[es]" (see id. ¶¶ 139, 156, 175, 192), when in fact Norberto obtained these contracts "by virtue of a widespread bribery and kickback scheme." (Id. ¶¶ 140, 157, 176, 178, 193) DoubleLine asserts that "[Norberto's] bid success rate was not due to its 'selectivity,' but to its payment of approximately $98 million in illicit bribes to Venezuelan officials between 2006 and 2015 in order to obtain and retain public works contracts." (Id. ¶¶ 136, 155, 172, 191) DoubleLine also alleges that Defendants' offering memoranda and other materials "falsely asserted that the financial statements contained therein were prepared and presented in accordance with Brazilian GAAP." (See id. ¶ 94)

### 2. The DoubleLine Sanctions Order

Judge Moses has presided over the discovery process in DoubleLine. As she recounts in the R&R,

> [i]n the course of discovery [in that case], DoubleLine requested "all documents, deposition transcripts, and/or written statements provided by Odebrecht to the United States Department of Justice [DOJ] and any other governmental or regulatory agency in connection with the investigations conducted by those agencies into the large-scale bribery scheme, perpetrated by Odebrecht, that underlies this securities fraud action."

(R&R (Dkt. No. 151) at 7 (quoting DoubleLine, 2022 WL 3029014, at *1)) Defendants refused to produce the requested documents, and DoubleLine moved to compel production. (Id.)

On October 13, 2020, Defendants advised Judge Moses that they were "ready, willing, and able to produce" the above-described documents, so long as the documents "pre-existed the various government investigations in which they were turned over," and Defendants could include them in their larger production without identifying which documents were produced to which governmental or regulatory agencies. DoubleLine, 2022 WL 3029014, at *1.

On October 14, 2020, Judge Moses "issued [a] Production Order, directing [D]efendants to produce the documents, subject to the agreed-upon limitations, within 30 days." (R&R (Dkt. No. 151) at 7 (citing DoubleLine, 2022 WL 3029014, at *1, *7))

Two weeks later, Defendants moved for reconsideration, "arguing – for the first time – that 'applicable Brazilian law' would apply 'broadly' to prohibit them from producing any documents or data previously provided to prosecutors in Brazil, the United States, or elsewhere." DoubleLine, 2022 WL 3029014, at *2 (emphasis in original). On October 30, 2020, Judge Moses denied the motion for reconsideration. Id.

Defendants did not seek review of either the Production Order or the denial of their motion for reconsideration. (R&R (Dkt. No. 151) at 7-8) "Instead, for the next year, [Defendants] simply remained in violation of the [Production] Order, telling the Court at a conference on October 13, 2021, that [their] position had not changed." (Id. (quoting DoubleLine, 2022 WL 3029014, at *2))

Defendants likewise

> "refused either to admit the facts that plaintiffs allege or permit other discovery into them (by interrogatory or deposition), claiming, in effect, that 'applicable foreign law' prevents them from divulging any information previously shared with a prosecutor, except for the negotiated admissions contained in the Leniency Agreement [with Brazil's Federal Prosecutor's Office] and the ['Statement of Facts' contained in Odebrecht's plea agreement with the U.S. Attorney's Office for the Eastern District of New York]."

(Id. at 8 (quoting DoubleLine, 2022 WL 3029014, at *12) (emphasis in DoubleLine omitted) (alterations added))

On November 5, 2021, DoubleLine moved for sanctions pursuant to Federal Rule of Civil Procedure 37(b). (Id.) In response, Defendants conceded that they were in violation of the Production Order and "that [they had] 'missed the opportunity to seek a protective order' that

might have justified their conduct." (Id. (quoting DoubleLine, 2022 WL 3029014, at *10)) Nevertheless, Defendants argued that "that their noncompliance 'was "not willful or in bad faith because Brazilian law bars the production of the Subject Documents."'"" (Id. (quoting DoubleLine, 2022 WL 3029014, at *10))

On July 19, 2022, Judge Moses granted DoubleLine's Rule 37(b) motion for sanctions (the "Sanctions Order"). (Id.) In determining the appropriate sanction for Defendants' discovery misconduct, Judge Moses concluded that a default judgment would be "disproportionately harsh," but that "[c]ivil contempt sanctions would almost certainly fail" to induce Defendants to comply with the Production Order. (Id. at 8-9 (quoting DoubleLine, 2022 WL 3029014, at *3, *12)) Accordingly, Judge Moses imposed an evidentiary sanction; she ordered that "the following facts shall be taken as established for purposes of this action":

> (1) Defendants made all of the misrepresentations and omissions alleged in plaintiffs' Third Amended Complaint concerning the Odebrecht Notes.
>
> (2) Those misrepresentations and omissions were material.
>
> (3) Defendants made those material misrepresentations and omissions with scienter.
>
> (4) [Engenharia] is the successor of defendant [Norberto].

DoubleLine, 2022 WL 3029014, at *13. "Odebrecht did not object to the Sanctions Order pursuant to Rule 72(a). Nor did it take any other steps to contest the sanction." (R&R (Dkt. No. 151) at 9)

### C. Discovery in the Instant Action

Discovery commenced in the instant action in August 2023. (Id.) In its requests for production, Plaintiff sought all documents that Defendants produced or provided to the United States Department of Justice or the United States Attorney's Office for the Eastern

District of New York concerning the alleged bribery scheme. (Id.; Britton Decl., Ex. 8 (Dkt. No. 142-8) at 14) Defendants objected to this request on several grounds, including to the extent that it sought "the production of documents in violation of applicable Brazilian law or orders and/or Defendants' leniency agreement with Brazilian or other applicable authorities." (R&R (Dkt. No. 151) at 9; Britton Decl., Ex. 8 (Dkt. No. 142-8) at 14-15)

In addition to refusing to produce the requested documents, Defendants have refused to respond to 55 requests for admission concerning the bribes, invoking the same rationale set forth in DoubleLine. (R&R (Dkt. No. 151) at 10)

> As in DoubleLine, [Defendants] have refused to admit that any specific bribes, in any specific amounts or ranges, were paid to any specific recipients in any specific years or span of years, relying on their supposed confidentiality obligations under foreign law.

Id.

On October 6, 2023, Plaintiff filed a pre-motion letter regarding its "contemplated motion to apply collateral estoppel to certain factual findings [established in DoubleLine]." (Pltf. Oct. 6, 2023 Ltr. (Dkt. No. 121) at 1) On November 29, 2023, Plaintiff filed a motion to compel Defendants to respond to certain discovery requests. (Pltf. Nov. 29, 2023 Ltr. (Dkt. No. 134)) And on December 6, 2023, Judge Moses denied the motion to compel "without prejudice to renewal after resolution of [P]laintiff's upcoming motion for summary judgment" concerning the collateral estoppel issue. (Order (Dkt. No. 138))

## III. PROCEDURAL HISTORY

The Complaint was filed on October 20, 2017, and the First Amended Complaint was filed on February 1, 2018. (Dkt. Nos. 1, 35)

On March 5, 2018, Defendants Norberto and Engenharia, along with former Defendant Odebrecht Finance Ltd., moved to dismiss the First Amended Complaint. (Mar. 5,

2018 Mot. to Dismiss (Dkt. No. 47)) On May 20, 2020, this Court granted in part and denied in part Defendants' motion. Odebrecht I, 461 F. Supp. 3d at 80.

On July 9, 2020 Plaintiff filed the SAC. (Dkt. No. 86)

On September 14, 2020, Defendants moved to dismiss (1) the SAC's Federal and state law claims to the extent that they are premised on Brazilian GAAP violations; (2) the SAC's Federal and state law control person liability claims against Odebrecht; and (3) all claims against Engenharia to the extent they are not premised on successor liability. (Sept. 14, 2020 Mot. to Dismiss (Dkt. No. 87)) On August 4, 2023, this Court granted in part and denied in part Defendants' motion to dismiss the SAC. Odebrecht II, 2023 WL 5016787, at *20.

On August 15, 2023, this Court referred the case to Magistrate Judge Moses for general pretrial supervision. (Order of Ref. (Dkt. No. 112))

In an October 6, 2023 letter, Plaintiff requested a pre-motion conference regarding Plaintiff's "contemplated motion to apply collateral estoppel to certain factual findings in [DoubleLine]." (Pltf. Oct. 6, 2023 Ltr. (Dkt. No. 121) at 1) On November 7, 2023, this Court referred Plaintiff's contemplated motion to Judge Moses for an R&R. (Am. Order of Ref. (Dkt. No. 129)) On December 7, 2023, Plaintiff moved for partial summary judgment on the ground that Defendants are precluded, pursuant to the doctrine of collateral estoppel, from litigating the facts established in DoubleLine. (Pltf. Mot. (Dkt. No. 139)) On July 10, 2024, Judge Moses issued an R&R recommending that this Court deny Plaintiff's motion for partial summary judgment. (R&R (Dkt. No. 151) at 25)

In her R&R, Judge Moses notifies the parties that, "pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)," they "have 14 days from this date to file written objections to this Report and Recommendation." (R&R (Dkt. No. 151) at 25) The R&R further

states that a "[f]ailure to file timely objections will result in a waiver of such objections and will preclude appellate review." (Id. (emphasis omitted) (citing, inter alia, Thomas v. Arn, 474 U.S. 140, 155 (1985)))

Neither side has submitted objections to the R&R.

## DISCUSSION

## I. LEGAL STANDARDS

### A. Review of Magistrate Judge's Report & Recommendation

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where, as here, no timely objection has been made to a magistrate judge's R&R – despite clear warning that a failure to file objections will result in a waiver of judicial review – judicial review has been waived. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

This rule is non-jurisdictional, however, and because "its violation may be excused in the interests of justice," DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court has considered whether there is any "'clear error on the face of the record'" that precludes acceptance of Judge Moses's recommendation. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note); see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and

recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.").

"Clear error is found only when, upon review of the entire record, the Court is left with 'the definite and firm conviction that a mistake has been committed.'" Grant v. Gonyea, No. 19CV743AJNDCF, 2022 WL 1173341, at *1 (S.D.N.Y. Apr. 20, 2022) (quoting Laster v. Mancini, No. 07-CV-8265 (DAB) (MHD), 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013)).

## II. ANALYSIS

Judge Moses recommends that this Court deny Plaintiff's motion for partial summary judgment, concluding that collateral estoppel does not apply because the facts judicially determined in DoubleLine were not "actually litigated" in that case, and that application of collateral estoppel would be unfair to Defendants. (R&R (Dkt. No. 151) at 2, 17-25)

### A. Applicable Law

"Nonmutual offensive collateral estoppel, a form of issue preclusion, 'preclude[s] a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.'" Bifolck v. Philip Morris USA Inc., 936 F.3d 74, 79-80 (2d Cir. 2019) (quoting Faulkner v. Nat'l Geographic Enters. Inc., 409 F.3d 26, 37 (2d Cir. 2005) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979)) (alteration in original)). To successfully invoke this doctrine, a plaintiff must satisfy four conditions:

> (1) the issues in both proceedings must be identical,
>
> (2) the issue in the prior proceeding must have been actually litigated and actually decided,
>
> (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and

(4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

Id. (citing Faulkner, 409 F.3d at 37) (quotation marks and further citation omitted in original). "Additionally, in order to blunt the fear that nonmutual offensive collateral estoppel may be unfair to a defendant or fail to promote judicial economy, district courts must ensure that application of the doctrine is not unfair." Id. (citing Parklane Hosiery, 439 U.S. at 331).

**B. Analysis**

**1. Whether the Issues Presented in the Two Proceedings Are Identical**

To satisfy the first Bifolck element, a plaintiff must show that the issues presented in both proceedings are identical. Bifolck, 936 F.3d at 79. "To determine whether the issues are identical, [courts] begin by restating the issue to which [the plaintiff] seeks to give preclusive effect." Id. at 81.

Here, Plaintiff seeks preclusion on the issues of falsity, materiality, and scienter with respect to specific misstatements alleged in the SAC and restated in Paragraphs 8, 10, 12, 14, 16, 18, 20, 22, and 24 of Plaintiff's Local Rule 56.1 Statement. (Pltf. Br. (Dkt. No. 140) at 5) Plaintiff's Local Rule 56.1 Statement, the SAC, and the DoubleLine TAC all cite the same alleged misstatements and assert that these statements are false, were material, and were made with scienter.[4] (See Pltf. R. 56.1 Stmt. (Dkt. No. 141) ¶¶ 7-24 (citing SAC (Dkt. No. 86) ¶¶ 79-80, 82-83, 85-86, 89-90, 121-29, 131-34; Britton Decl., Ex. 1 (DoubleLine TAC) (Dkt. 142-1) ¶¶

[4] In both actions, plaintiffs challenge the statements on the ground that "Defendants failed to disclose a material bribery scheme, including the expenses of the bribes paid in that scheme." (Pltf. R. 56.1 Stmt. (Dkt. No. 141) ¶¶ 25-26 (citing SAC (Dkt. No. 86) ¶¶ 81, 84, 87, 93, 122, 124, 126, 129, 132, 134; Britton Decl., Ex. 1 (DoubleLine TAC) (Dkt. 142-1) ¶¶ 100, 110-117, 142, 143, 157, 159, 160, 176, 180, 181, 193)) And in both actions plaintiffs allege that "Defendants disseminated or approved the materially false and misleading statements . . . , which they knew or deliberately disregarded were misleading. . . ." (See id. ¶¶ 29-30 (citing SAC (Dkt. No. 86) ¶¶ 8, 10, 12, 14, 16, 18, 20, 22, and 24; Britton Decl., Ex. 1 (DoubleLine TAC) (Dkt. 142-1) ¶¶ 7, 9, 11, 13, 15, 17, 19, 21, and 23))

142-43, 156, 159-60, 175, 180-81, 192)) As a Rule 37(b) discovery sanction in DoubleLine, Judge Moses ordered that the falsity and materiality of these alleged misstatements be "taken as established," and that the element of scienter likewise be "taken as established" with respect to those statements. DoubleLine, 2022 WL 3029014, at *13. In her R&R, Judge Moses finds that the issues of falsity, materiality, and scienter presented with respect to the alleged misstatements in DoubleLine are identical to the issues of falsity, materiality, and scienter presented with respect to the alleged misstatements cited in Paragraphs 8, 10, 12, 14, 16, 18, 20, 22, and 24 of Plaintiff's Local Rule 56.1 Statement. (R&R (Dkt. No. 151) at 13)

Plaintiff also seeks preclusion on the issue of whether Engenharia is the successor of Norberto. (Pltf. Br. (Dkt. No. 140) at 5) Judge Moses considered this issue in DoubleLine and ruled that "[Engenharia] is the successor of [Norberto]." DoubleLine, 2022 WL 3029014, at *13. In the R&R, Judge Moses concludes that the issue of successor liability presented here is identical to the issue decided in DoubleLine. (R&R (Dkt. No. 151) at 14)

Defendants argue, however, that the issues presented in the instant action are not identical to those presented in DoubleLine because "[t]he Sanctions Order in DoubleLine addressed whether Defendants should be sanctioned for discovery non-compliance and what form such a sanction should take," while in this action Plaintiff "seeks a determination on the merits." (Def. Br. (Dkt. No. 147) at 10) As Judge Moses explains, however, Defendants misconstrue the necessary analysis, which focuses on "'the issue[s] as to which preclusion is sought,' [and] not the procedural mechanism used to resolve those issues in the prior case." (R&R (Dkt. No. 151) at 14 (quoting Bifolck, 936 F.3d at 82) (emphasis in Bifolck) (internal citation omitted))

Because the issues as to which Plaintiff seeks preclusive effect are the same issues that were decided in DoubleLine, this Court finds no clear error in Judge Moses's determination that the first Bifolck factor is satisfied. See Bifolck, 936 F.3d at 80-81 ("The first prong requires that the issue decided in the earlier case and the issue to which the plaintiff seeks to give preclusive effect be identical. It is concerned not with 'claims or . . . causes of action as a whole,' but with issues—'single, certain and material point[s] arising out of the allegations and contentions of the parties.'") (internal citation omitted) (emphasis in Bifolck).

### 2. Full and Fair Opportunity to Litigate

To satisfy the third Bifolck element, Plaintiff must show that Defendants had "a full and fair opportunity for litigation in the prior proceeding." Bifolck, 936 F.3d at 80.

Plaintiff argues that Defendants had a "full and fair opportunity" to litigate the issues resolved in DoubleLine, "but forfeited that right" by refusing to comply with Judge Moses's Production Order. (Pltf. Br. (Dkt. No. 140) at 15-16 (citing, inter alia, In re Snyder, 939 F.3d 92, 101 (2d Cir. 2019)) Defendants counter that they did not have a "full and fair opportunity" to litigate the facts established in DoubleLine because "the litigation in DoubleLine was focused on sanctions, not the merits of the claims." (Def. Br. (Dkt. No. 147) at 15)

Judge Moses concludes that Defendants "'had every opportunity to fully and fairly litigate' the merits of the claims against them in DoubleLine, but 'simply elected not to comply with court orders.'" (R&R (Dkt. No. 151) at 15 (quoting In re Docteroff, 133 F.3d 210, 215 (3d Cir. 1997))) This Court agrees. In DoubleLine, Defendants could have sought a protective order, otherwise sought to narrow the scope of production, or sought review of the Production Order before this Court. (See R&R (Dkt. No. 151) at 15) Defendants also "could have asked the Brazilian authorities for permission to produce [the requested materials], or simply obeyed the Production Order and risked possible repercussions in Brazil." (Id.) Rather

than pursue these various options or "take the steps required to preserve their ability to litigate falsity, materiality, or scienter on the merits," Defendants willfully refused to comply with the Production Order. (Id.) See DoubleLine, 2022 WL 3029014, at *10 (finding Defendants' non-compliance with the Production Order willful because "'the court's orders [had] been clear, [Defendants] understood them, and [Defendants'] non-compliance [was] not due to factors beyond the [Defendants'] control'") (quoting Figueroa v. W.M. Barr & Co., Inc., 18-CV-11187 (JGK) (KHP), 2020 WL 996473, at *3 (S.D.N.Y. Mar. 2, 2020) (quoting Davidson v. Dean, 204 F.R.D. 251, 255 (S.D.N.Y. 2001))).

In sum, this Court finds no clear error in Judge Moses's determination that Defendants had a full and fair opportunity to litigate the issues of falsity, materiality, scienter, and successor liability, but forfeited that opportunity by refusing to comply with the Production Order. See Claridge Assocs., LLC v. Schepis, 15 Civ. 4514 (KPF), 2020 WL 6505210, at *7 (S.D.N.Y. Nov. 5, 2020) (applying collateral estoppel where, in a prior state court proceeding, defendants, "'by deliberate action, refused to defend or litigate the charge or allegation that is the subject of the preclusion request'") (quoting In re Abady, 800 N.Y.S.2d 651, 660 (1st Dep't 2005)). Accordingly, the third Bifolck prong is satisfied.

### 3. Whether the Issue as to which Preclusive Effect Is Sought Was Necessary to a Final Judgment

To satisfy the fourth Bifolck element, Plaintiff must show that "the issue [as] to which . . . preclusive effect [is sought] '[was] necessary to support a valid and final judgment on the merits' in the earlier case." Bifolck, 936 F.3d at 82 (quoting Faulkner, 409 F.3d at 37). "An issue is 'necessary or essential only when the final outcome hinges on it.'" Id. (quoting Bobby v. Bies, 556 U.S. 825, 835 (2009)) (emphasis in Bifolck).

In moving for summary judgment, Plaintiff argues that the Sanctions Order is sufficiently "final" to satisfy the fourth Bifolck element. According to Plaintiff – by foreclosing discovery or argument concerning the issues of falsity, materiality, scienter, and successor liability – "the Sanctions Order confirmed that those 'particular issue[s] ha[ve] reached such stage that [the] [C]ourt [saw] no really good reason for permitting [them] to be litigated again.'" (Pltf. Br. (Dkt. No. 140) at 17 (quoting United States v. Walker, 239 F. Supp. 3d 738, 740 (S.D.N.Y. 2017)) (alterations in Dkt. No. 140)) Defendants – for their part – concede that the fourth Bifolck element is "arguably met." (Def. Br. (Dkt. No. 147) at 10 n.5)

Judge Moses concludes that the fourth Bifolck element is satisfied here even though – at the time she issued the R&R – "there [was] no final judgment in DoubleLine." (R&R (Dkt. No. 151) at 16 (citing B.N.E., Swedbank, S.A. v. Banker, 791 F. Supp. 1002, 1006 (S.D.N.Y. 1992) (stating that "there are exceptions to the finality requirement," including "where a ruling is rendered 'practically' final owing to factors demonstrating 'that it was not avowedly tentative, the adequacy of the hearing, and the opportunity for review'")))

On July 16, 2025 – after Judge Moses issued her R&R in the instant case – Judge Ho issued a decision granting in part and denying in part DoubleLine's motion for partial summary judgment. See DoubleLine Capital LP, et al. v. Odebrecht Finance, Ltd., et al., No. 17-cv-04576-GHW-BCM, 2025 WL 1951864, at *15 (S.D.N.Y. July 16, 2025). In so ruling, Judge Ho gave binding effect to the Sanction Order's determination that the elements of falsity, materiality, and scienter would be deemed proven for purposes of DoubleLine's Section 10(b) claim against Norberto and Engenharia. Id. at *10, *13. Judge Ho reached the same result as to the successor liability issue regarding Engenharia. Id. at *10

Courts in this Circuit have long held that "for purposes of issue or claim preclusion, summary judgment is considered a decision on the merits." DeCastro v. City of N.Y., 278 F.Supp.3d 753, 764 (S.D.N.Y. 2017) (collecting cases). Because the issues as to which Plaintiff seeks preclusive effect – falsity, materiality, scienter, and Engenharia's status as the successor of Norberto – were essential to the partial grant of summary judgment in DoubleLine – the fourth Bifolck prong is satisfied. See Bifolck, 936 F.3d at 81.

**4. Whether the Issues as to which Preclusion Is Sought Were Actually Litigated and Decided**

The second Bifolck element requires Plaintiff to show that the issues presented here – falsity, materiality, scienter, and successor liability – were "actually litigated and actually decided" in DoubleLine. See Bifolck, 936 F.3d at 79. Plaintiff contends that this element is satisfied even though "the issues were decided as a discovery sanction." (Pltf. Reply (Dkt. No. 149) at 9; see also Pltf. Br. (Dkt. No. 140) at 13-15) Defendants argue that the issues of falsity, materiality, scienter, and successor liability were not actually litigated in DoubleLine. According to Defendants, only the issue of "sanctions for discovery non-compliance" was litigated. (Def. Br. (Dkt. No. 147) at 12)

Plaintiff argues that "factual issues decided as a discovery sanction can satisfy the 'actually litigated' prong and be given preclusive effect." (Pltf. Br. (Dkt. No. 140) at 13 (citing In re Snyder, 939 F.3d 92, 97 (2d Cir. 2019); Sanders v. Sanders, 20-CV-5621 (VEC), 2021 WL 5988343, at *1 (S.D.N.Y. Dec. 17, 2021), aff'd, 2022 WL 16984681 (2d Cir. Nov. 17, 2022))) Judge Moses finds that Plaintiff's reliance on Snyder and Sanders is misplaced, however. (R&R (Dkt. No. 151) at 17-21)

In Snyder, the Second Circuit carved out an exception to the general rule that a "default judgment generally lacks preclusive effect because the underlying merits of the case are not actually litigated," Snyder, 939 F.3d at 97:

> [W]here the default judgment is entered as a sanction for bad conduct, and the party being estopped had the opportunity to participate in the underlying litigation, the default judgment has preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding.

Id. at 100 (citing In re Corey, 583 F.3d 1249, 1252-53 (10th Cir. 2009); In re Docteroff, 133 F.3d 210, 215 (3d Cir. 1997); In re Bush, 62 F.3d 1319, 1322-25 (11th Cir. 1995); In re Daily, 47 F.3d 365, 368-69 (9th Cir. 1995)). Likewise, in Sanders, the court acknowledged that "collateral estoppel does apply 'when default was entered as a sanction for deliberate misconduct.'" Sanders, 2021 WL 5988343, at *3 (citing Snyder, 939 F.3d at 100-01).

While Snyder and Sanders give preclusive effect to a sanctions order, the sanction imposed in each case was a default judgment. Here, by contrast, Judge Moses did not enter or recommend the entry of a default judgment against the DoubleLine defendants. See DoubleLine, 2022 WL 3029014, at *3, *12. (R&R (Dkt. No. 151) at 20-21) Indeed, in issuing the Sanctions Order, Judge Moses expressly rejected the notion that a default judgment would be appropriate, finding that such a remedy "would be disproportionately harsh" and was "not necessary to cure the prejudice that plaintiffs have suffered." DoubleLine, 2022 WL 3029014, at *3, *12. In concluding that a default judgment was not an appropriate remedy in DoubleLine, Judge Moses also notes that a default judgment would "relieve [the DoubleLine plaintiffs] of the burden of proving any of the elements of their federal securities fraud claims, including reliance and damages, which do not depend in any significant way upon the discovery that defendants have thwarted." Id. at *12 (emphasis in original).

In her R&R in the instant action, Judge Moses concludes that

> [i]t would be an unwarranted extension of Snyder, ungrounded in either its language or its logic, to give preclusive effect to a Rule 37(b)(2)(A)(i) discovery sanction that expressly established certain facts for the limited purpose of the litigation in which the sanction was imposed.

(R&R (Dkt. No. 151) at 20)

In reaching this conclusion, Judge Moses cites In re Pizante, 186 B.R. 484, 490 (B.A.P. 9th Cir. 1995), aff'd, 107 F.3d 878 (9th Cir. 1997). (See R&R (Dkt. No. 151) at 21) In Pizante, the bankruptcy court considered whether collateral estoppel applied to certain issues resolved in an earlier bankruptcy proceeding. Pizante, 186 B.R. at 488. In the earlier proceeding, the trustee in bankruptcy filed a complaint against a married couple – the Pizantes – alleging that two quitclaimed transfers of the couple's residence constituted a fraudulent conveyance. Id. at 487. In that proceeding, "Mrs. Pizante failed to comply with [a] discovery order and failed to bring a timely motion to reconsider the discovery order," and the bankruptcy court entered a default judgment against Mrs. Pizante and deemed certain facts admitted as a consequence of her default. Id. at 489. In so ruling, however, the bankruptcy court acted pursuant to Federal Rule of Civil Procedure 36, which provides that "[a]ny admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding." Id. at 489 (quoting Fed. R. Civ. P. 36).

In a later bankruptcy court action, a creditor argued that the court should give preclusive effect to the facts that were deemed admitted in the earlier bankruptcy proceeding. Id. at 486. The lower court declined to apply collateral estoppel, however, and a three-judge bankruptcy appellate panel affirmed, finding that "[b]ecause the deemed admissions were applicable solely in the [first] proceeding, and not in the [second] proceeding, the 'actually litigated' element of collateral estoppel is unsatisfied." Id. at 489.

In the DoubleLine Sanctions Order, Judge Moses expressly states that the "established" facts regarding falsity, materiality, scienter, and successor status are deemed established solely "for purposes of [the DoubleLine] action" pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i). DoubleLine, 2022 WL 3029014, at *13. And in her R&R in the instant case, Judge Moses relies on Pizante to find that the "actually litigated" element of the Bifolck test is not satisfied. (R&R (Dkt. No. 151) at 21-23 (citing Pizante, 186 B.R. at 490)).

Given that the facts established in DoubleLine were deemed established only for purposes of the DoubleLine action and in connection with Rule 37(b), and because those facts were deemed established in the absence of discovery, this Court finds no clear error in Judge Moses's determination that the "actually litigated" element is not satisfied. See In re: General Motors LLC Ignition Switch Litig., 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2016 WL 4480093, at *2 (S.D.N.Y Aug. 24, 2016) (declining to apply collateral estoppel where bankruptcy court determined that General Motors "knew or should have known of [an] ignition switch defect in May 2009," but did so "only for the purpose of [the bankruptcy court's] resolution of" certain threshold issues and in the "absence of facts litigated through discovery") (citing, inter alia, Parklane Hosiery, 439 U.S. at 331 n.15 (noting that the "application of offensive collateral estoppel may be unwarranted" where the party against whom collateral estoppel is sought "was unable to engage in full scale discovery or call witnesses" in the earlier action); Sprecher v. Graber, 716 F.2d 968, 972 (2d Cir. 1983) (declining to apply collateral estoppel where earlier case was dismissed before discovery); Music Sales Corp. v. Morris, 73 F. Supp. 2d 364, 377 (S.D.N.Y. 1999) ("[Collateral] [e]stoppel applies only to issues that have been actually litigated; it does not apply either to issues that were determined without litigation (such as under a settlement agreement) or to those that could have been litigated but were not."); see

also Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 361 (3d Cir. 1983) (collateral estoppel not applicable where the "the issue of in personam jurisdiction was not fully litigated in the prior proceedings," but rather was established pursuant to a discovery sanction).

**5. Fairness**

Even where all four Bifolck elements are satisfied, "district courts must ensure that application of the [nonmutual offensive collateral estoppel] doctrine is not unfair." Bifolck, 936 F.3d at 80, 84 (citing Parklane Hosiery, 439 U.S. at 331 ("where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel")). In Parklane Hosiery, the Supreme Court set forth factors that may render the application of nonmutual offensive collateral estoppel unfair, including where the defendant had "little incentive to defend vigorously" in the first action; where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant"; and "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." Parklane Hosiery, 439 U.S. at 330-31.

Here, Judge Moses concludes that it would be unfair to give the Sanctions Order preclusive effect because

> [i]t is unlikely . . . that defendants could have anticipated that a discovery sanction imposed pursuant to Rule 37(b)(2)(A)(i), and limited by its terms to the DoubleLine action, would nonetheless be applied offensively in another case, for the benefit of another plaintiff, without any finding of misconduct in the second case.

(R&R (Dkt. No. 151) at 24-25)

Courts in this Circuit have found that a "lack of foreseeability at the time of the prior action that the issue would arise in subsequent litigation" is a factor that "counsel[s] against

application of collateral estoppel." Sanders v. Sanders, 20-CV-5621 (VEC), 2021 WL 4392053, at *11 (S.D.N.Y. Sept. 24, 2021); see also Purchase Partners, LLC v. Carver Fed. Sav. Bank, 914 F.Supp.2d 480, 496 (S.D.N.Y. 2012) (finding that application of collateral estoppel would be unfair where the defendant "could not necessarily have foreseen that its failure to file an appeal would have preclusive effect in a subsequent action"). Given that Judge Moses's Sanctions Order was issued "for purposes of [the DoubleLine] action" and was premised on discovery misconduct that occurred in that case, it was not necessarily foreseeable to Defendants that – as a result of the Sanctions Order – they would be precluded from litigating falsity, materiality, scienter, and successor liability in a subsequent action brought by a different plaintiff. Accordingly, this Court finds no clear error in Judge Moses's determination that the application of collateral estoppel here would be unfair to Defendants.

**CONCLUSION**

For the reasons stated above, Judge Moses's R&R (Dkt. No. 151) is adopted in its entirety, and Plaintiff's motion for partial summary judgment (Dkt. No. 139) is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 139).

Dated: New York, New York
September 24, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge